# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

**NO. 21-30518**
**consolidated with**
**NO. 21-30528**

---

## UNITED STATES OF AMERICA,

Plaintiff-Appellee

## V.

## LEE E. UNDERWOOD, JR.,

Defendant-Appellant.

---

CRIMINAL APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
CRIMINAL ACTIONS NO. 04-CR-30059 AND NO. 3:21-CR-16
RESPECTIVELY

---

## ORIGINAL BRIEF ON BEHALF OF
## DEFENDANT-APPELLANT  LEE  E.  UNDERWOOD,  JR.

---

Elizabeth Cary Dougherty, #23040
Dougherty Law Firm, L.L.C.
P.O. Box 80419
Baton Rouge, Louisiana 70898-0419
(225) 205-7937 (Phone)
Tuppydougherty@msn.com (Email)
ATTORNEY FOR APPELLANT

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**NO. 21-30518**
**consolidated with**
**NO. 21-30528**

---

**UNITED STATES OF AMERICA**,

Plaintiff-Appellee

**V.**

**LEE E. UNDERWOOD, JR.,**

Defendant-Appellant.

---

CRIMINAL APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
CRIMINAL ACTIONS NO. 04-CR-30059 AND NO. 3:21-CR-16
RESPECTIVELY

---

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of these proceedings. These representations are made in order that the Judges of this Court may evaluate possible recusal or disqualification.

i

Appellant:

    Lee E. Underwood, Jr.
    No. 12512-035
    FCI Beaumont Low
    Federal Correctional Institution
    P.O. Box 26020
    Beaumont, TX  77720

Attorney for Appellant:

    Elizabeth Cary Dougherty
    The Dougherty Law Firm, LLC

Appellee:

    The United States of America

Attorney for Appellee:

    Camille Domingue
    U.S. Attorney's Office
    Western District of Louisiana
    Lafayette, Louisiana

Baton Rouge, Louisiana this_4th__ day of July, 2022.

        /s/ Elizabeth Cary Dougherty_____
        Elizabeth Cary Dougherty No.23040
        The Dougherty Law Firm, LLC
        P. O. Box 80419
        Baton Rouge, Louisiana 70898-0419
        (225) 205-7937 (Phone)
        Tuppydougherty@msn.com

## STATEMENT REGARDING ORAL ARGUMENT

The issue raised in this appeal is well-settled by this Court's precedent.

The Defendant-Appellant does not request oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS. . . . . . . . . . . . . . . . . . . . . . . . i

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . iii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

The probation officer's dereliction of his statutory and guidelines duty to immediately report to the court or the government the conduct and condition of the Defendant that violated his supervised release, despite contemporaneous knowledge of the conduct that formed the basis for revocation, was fundamentally unfair, denied Lee Underwood due process. It ultimately resulted in a sentence substantively unreasonable.

      A) Standard of Review: Due Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      Law and Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

B)    The sentence of 205 months as a result of the April, 2021, Superceding Indictment and plea agreement to counts 2 and 3 is substantively unreasonable.

Standard of Review: Substantive Unreasonableness............................21

Law and Analysis.................................................................................22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

# <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Gagnon v. Scarpelli*, 411 U.S. 778 (1973)..........................................14,16

*Gall v. United States*, 552 U.S. 38 (2007)...............................................22

*Morrissey v. Brewer*, 406 U.S. 471 (1979)...................................14,15,16

*Puckett v. United States*, 556 U.S. 129 (2009).......................................13

*United States v. Jackson*, 2009 WL 3085588
    (USDC-MD TN 11/12/2009)..........................................................14

*United States v. Napper*, 978 F.3d 118 (5th Cir. 2020).........................22

*United States v. Tippens*, 38 F.3d 88 (5th Cir. 1984)............................19,20

*United States v. Tyler*, 605 F.2d 851 (5th Cir. 1979).....................14,15,20

;*United States v. Warren*, 720 F.3d 321 (5th Cir. 2013).........................22

**FEDERAL STATUTES**

18 USC § 924(c)(1).........................................................................6

18 USC § 3742................................................................................2

18 USC § 3602(2)...........................................................................5

18 USC § 3603(2),(3),(4),(8).........................................................15

21 USC § 841(a) and (b)................................................................5

28 USC §1291................................................................................2

## SENTENCING GUIDELINES

§ 4A1.2..................................................................................................9

§ 7B1.1, 1.2......................................................................................4,8,16

§ 7B1.3...........................................................................................8,17

## OTHER

F. Remington *et al.*
Criminal Justice Administration, Materials and Cases (1969).......................16

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**NO. 21-30518
consolidated with
NO. 21-30528**

---

**UNITED STATES OF AMERICA**,

Plaintiff-Appellee

**V.**

**LEE E. UNDERWOOD, JR.,**

Defendant-Appellant.

---

CRIMINAL APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
CRIMINAL ACTIONS NO. 04-CR-30059 AND NO. 3:21-CR-16
RESPECTIVELY

---

## STATEMENT OF JURISDICTION

This consolidated appeal arises in 21-30518 from the Final Judgment (for

Revocation of Supervised Release), filed 08/19/2021, and Notice of Appeal,

filed 08/19/2021.  ROA.21-30518.261-64.  In 21-30528, from Final Judgment

filed 08/19/2021, and Notice of Appeal filed 08/19/2021.  ROA.21-30528.58-

64.

The Court has jurisdiction over this consolidated appeal pursuant to 28 USC §1291 and 18 USC §3742.

## STATEMENT OF ISSUE

The probation officer's dereliction of his statutory and guidelines duty to immediately report to the court or the government the conduct and condition of the Defendant that violated his supervised release, despite contemporaneous knowledge of the conduct that formed the basis for revocation, was fundamentally unfair, denied Lee Underwood due process, and it ultimately resulted in a sentence substantively unreasonable.

## STATEMENT OF THE CASE

This consolidated matter arises from repeated instances of criminal conduct involving Lee Underwood and his addicted use of and intended sale of methamphetamine.

**21-30518**

This appeal arises from a revocation sentencing.  The underlying conduct occurred in 2004.  ROA.21-30518.408-31.  Lee Underwood was indicted in four of five counts involving a conspiracy to possess, use, and distribute methamphetamine.  He entered a plea of guilty to Count 1, Conspiracy to Possess with Intent to Distribute Methamphetamine, and was sentenced in August, 2005, to 262 months incarceration with 5 years supervision after his release.  ROA.21-30518.89-94.  His criminal history category was III, and that calculation included 4 points for past criminal conduct involving methamphetamine possession with intent to distribute and use.  ROA.21-30518.416-19.  At sentencing, the district court took particular notice of Lee Underwood's admitted and serious methamphetamine addiction, and recommended that the Bureau of Prisons conduct its examinations necessary to allow Lee to participate in 500 hours of rehabilitation while incarcerated.

ROA.21-30518.314.  The court also provided a special condition of supervision acknowledging that Lee would be a "high risk" of relapsing into methamphetamine use and ordering that he submit to drug screening at the direction of the probation officer.  Thus, if the probation officer was told of Lee's alleged use of methamphetamine, that would be one violation of the supervised release - a GRADE A violation - and would require the immediate revocation of supervised release.  §§ 7B1.1, 1.2.  Indeed, if Lee Underwood then refused to cooperate with inpatient or outpatient drug rehabilitation treatment, that too would be another clear violation of the terms of supervised release and necessitate immediate revocation of the supervised release - both being GRADE A violations.  § 7B1.1,1.2.

Lee Underwood was released from incarceration October 21, 2019, into the custodial residence of his sister and husband.  On May 13, 2020, and again in August, 2020, Lee's sister and husband alerted the probation officer to Lee's relapse and use of meth and subsequent refusal to submit to rehabilitation.  ROA.21-30528.206.  However, the probation officer failed to take the requisite action to immediately report the violation to the court and to revoke Lee Underwood's supervised release as mandated by statute and by the sentencing

guidelines.  ROA.21-30528.206; 18 USC § 3602(2).

Instead, a full six months after repeatedly being notified by Lee's custodial family, (his sister and her husband, and after Lee's meth use was on the radar of the DEA and local Sheriff's officials in Ouachita Parish), the probation officer finally obtained an arrest warrant for Lee's violation of supervised release.  ROA.21-30528.197.  Tragically, in May, 2020, Lee succumbed to his "demon meth," and without court intervention, by November , 2020, Lee Underwood was overwhelmed by his addiction and into the "demon" cycle of use, sell, buy, use, sell, buy methamphetamine.  His home in the countryside was a "meth house," his companions, all "meth heads."

**21-30528**

This matter was consolidated with 21-30518.  On January 27, 2021, Lee Underwood was indicted on five counts of criminal conduct arising out of the arrest the previous November, 2020, including the agents' recovery of firearms at Lee's house.  ROA.21-30528.195-217.  On May 11, 2021, Lee Underwood pleaded guilty to Count 2, Possession with Intent to Distribute Methamphetamine, in violation of 21 USC §§ 841(a)(1) and (b)(1)(B)(viii), and Count 3, Possession of a Firearm in Furtherance of Drug Trafficking in violation

of 18 USC § 924(c)(1), of the Superseding Indictment. ROA.21-30528.33-38,130-144. While incarcerated awaiting sentencing, Lee Underwood spoke in a recorded phone call to another person about the firearms recovered in his house. The district court was made aware of the recorded call and agreed with the probation officer that Lee was at least attempting to obstruct justice, thereby earning a two-point enhancement in his sentencing guidelines calculation. ROA.21-30528.200-214. The probation officer determined a guidelines sentencing range for Count 2 to be 100-125 months, and a required statutory sentence of 60 months for Count 3 to run consecutively to the sentence for Count 2. The probation officer also recommended "factors that may warrant departure" to include the all of the criminal conduct for which Lee Underwood had previously served 14 years that had just ended in October, 2019. Several of those convictions were prescribed in accordance with the sentencing guidelines, and Mr. Underwood objected both in written objections and in his Sentencing Memorandum. ROA.21-30528.215-17,277-82. The district court sentenced Lee Underwood to 145 months incarceration for Count 2 reflecting a 10 month upward variance from a guidelines range. Lee Underwood's total sentence was 205 months incarceration.

Lee Underwood was 53 years old at the time of sentencing. By his own admission, Lee had been addicted to methamphetamine since he was 17 years old, in 1985. He referred to it as the "demon meth" he fought every day. ROA.21-30528.209. He was 37 years old when he was incarcerated in 2005 for 14 years. In May, 2020, after only six months, Lee was in the grips of addiction to methamphetamine again, and even though the probation officer was immediately alerted to the breach, the officer failed his mandatory duty to report the Grade A violation to the court, to revoke the supervised release and to arrest Lee Underwood. That did not happen for six more months in spite of repeated pleas from Lee's custodial family. ROA.21-30528.206.

## SUMMARY OF THE ARGUMENT

This matter should only be a sentencing revocation matter but for the dereliction of duty on the part of the probation officer in the face of direct pleas for help from Lee Underwood's custodial family.

Lee Underwood was 53 at the time of sentencing. For the first 16 years of his life he was free of methamphetamine addiction. But the "demon," as he candidly talked about his addiction, captured Lee Underwood at age 17, and he has failed in his first attempt to conquer his addiction. After extensive rehabilitation while incarcerated from 2005 - 2019, and 6 months of drug-free supervised release, Lee Underwood failed himself, failed his family, and violated the terms of his supervised release. On May 13, 2020, his custodial family immediately called the probation officer and alerted him to Lee's violation. Under the Guidelines, Lee's use of methamphetamine was a GRADE A violation, and the guidelines mandated the probation officer to promptly report to the court, and the court "shall revoke the supervised release." §§§ 7B1.1,1.2,1.3.

Nothing happened in May, 2020. Nothing of this order happened at all in spite of repeated calls from the custodial family to the probation officer until

November 19, 2020, when the probation officer notified the Ouachita Parish Sheriff's Office of a warrant to arrest Lee Underwood for the violation of supervised release.  By this time - six months after Lee's sister contacted the probation officer, Lee Underwood was tragically controlled by his "demon meth."  The result was a new indictment for his methamphetamine activity, including the consequences of firearms in his house.

The probation officer's dereliction of duty to immediately report Lee's alleged violation of supervised release to the court and issue the arrest warrant *at that time* was a due process violation of Lee Underwood's right.  The officer's delay prevented Lee Underwood from mitigating the consequences of his violation, resulting in a 145 month sentence arising from the criminal conduct that had snowballed over those 6 months from May to November, 2020.  Had the probation officer performed his mandatory statutory and guidelines duties timely, Lee Underwood's sentence would be more in line with the 35 months incarceration imposed by the district court as his revocation sentence.

In addition, the district court's ultimate sentence of 205 months incarceration is substantively unreasonable, because it erroneously took into account past conduct prescribed by the sentencing guidelines § 4A1.2(e), and

erroneously failed to take into account the dereliction of duty of its own agent and the tragic results of that dereliction on Lee Underwood.

This Court should vacate the judgment in 21-30528, finding a due process violation, and remand for proceedings consistent with its opinion. The Court should also find that the sentence of 205 months is substantively unreasonable, vacate the judgment in 21-30528, and remand for resentencing, correcting the errors noted above.

# ARGUMENT

## Introduction

Lee Underwood suffers from a well-documented, severe, methamphetamine addiction, beginning when he was 17 years old, in 1985. ROA.21-30528.209. At 35 years old in 2005, and after at least four previous state-court convictions involving methamphetamine, including living in a "meth house," Lee was convicted in federal court and sentenced to 262 months incarceration. ROA.21-30518.416-19,313-14. At sentencing, the district court recommended to the Bureau of Prisons "[t]hat the defendant be evaluated ... and allowed to participate in the 500-hour comprehensive drug abuse treatment program if he is deemed to be eligible for this program." The court then instructed a Special Condition of Supervised Release, "Because the presentence report and other reliable sentencing information indicates a high risk of future substance abuse, the defendant shall submit to drug screens at the direction of the probation officer following release from confinement." ROA.21-30518.92. One of the "reliable" sources of information relied on by the district court at sentencing was one of Lee's sisters and her husband, who, on October 21, 2019, when Lee was released from the Bureau of Prisons into supervision, became his

custodial family member.  Lee moved in with his sister and her family.
ROA.21-30528.206.

By May, 2020, just 7 months after his release, Lee began using
methamphetamine again.  On May 13, 2020, his sister and her husband notified
the probation officer that Lee had relapsed to meth use.  The presentence report
is vague about the dates "the court was notified," but the fact is that the
probation officer waited until November 19, 2020, to issue an arrest warrant for
violation of supervised release.  ROA.21-30528.197.  By that time - six months
after his sister initiated repeated alerts to the probation officer about Lee's
supervised release violation specifically involving methamphetamine usage -
Lee was deep in the grip of addiction to the use of methamphetamine, and meth
trade to support his habit and the habit of his house mates.

Because Lee's meth addiction was recognized by the district court as the
core issue at sentencing in 2005, the probation officer was derelict in his duty
to immediately report and petition the court to arrest Lee Underwood, knowing
that Lee's addiction was an imminent risk to Lee himself, and knowing that
failure to arrest Lee was inconsistent with the Judgment of the district court in
2005.  Furthermore, the officer's dereliction of duty set Lee Underwood up to

fail, knowing that once Lee began using meth, he would spiral into the criminal activity that would result in the exact situation at Bar - an addict, 53 years old, sentenced to serve 205 months for the criminal activity that occurred after the officer was notified but did nothing.  ROA.21-30528.124.

**Issue**

The probation officer's dereliction of his statutory and guidelines duty to immediately report to the court or the government the conduct and condition of the Defendant that violated his supervised release, despite contemporaneous knowledge of the conduct that formed the basis for revocation, was fundamentally unfair, denied Lee Underwood due process, and ultimately resulted in a sentence substantively unreasonable.

**A)    Standard of Review: Due Process**

The probation officer's activities described above are undertaken as an agent of the district court.  18 USC § 3602(a).  Mr. Underwood failed to raise these arguments in the district court, thus, this Court's review is for plain error only under Federal Rule of Criminal Procedure 52(b).  Under the plain error standard, the Defendant must show that (1) there was an error or defect in the district court proceeding; (2) the error was clear or obvious; and (3) the error

affected his substantial rights. Even after such findings, this Court retains discretion to remedy the error, but should do so "only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

## Law and Analysis

It is now beyond question that due process rights guaranteed by the Fourteenth Amendment must be afforded to parolees. See *Morrissey v. Brewer*, 408 U.S. 471 (1972). The same protections were extended to probationers by the United States Supreme Court in *Gagnon v. Scarpelli*, 411 U.S. 778, (1973). "It is clear at least after *Morrissey v. Brewer* . . . that a probationer can no longer be denied due process . . . ." *Gagnon v. Scarpelli*, 411 U.S. at 782 n.4.

In an unpublished opinion, a district court provided an in-depth analysis of the duties of a probation officer, as an agent of the Court. *United States v. Jackson*, 2009 WL 3085588 (USDC-MD TN 11/12/2009). "While these landmark cases [*Morrissey* and *Gagnon*] deal specifically with the right of a probationer to have a hearing, it is clear that the Fourteenth Amendment due process provisions contemplate that any such hearing must comport with principles of fundamental fairness. *United States v. Tyler*, 605 F.2d 851, 853

(5ᵗʰ Cir. 1979); see also *Morrissey v. Brewer*, 408 U.S. at 484.

"Congress and the Supreme Court have spoken to the proper functions of probation officers." *United States v. Tyler*, 605 F.2d at 853. "Congress has defined the principal duties of probation officers "to aid" in the rehabilitation of the defendant. 18 U.S.C. § 3603(3); *see also* 18 U.S.C. § 3603(2)(4) and (8). To be sure, the probation officer must keep informed as to the defendant's compliance with his or her conditions of release, but the probation officer is also directed to report any observation of a violation of a defendant's condition of release to the district court and the federal prosecutor. 18 U.S.C. § 3603(8)(B)."

As the Supreme Court stated, "Our first point of reference is the character of probation or parole ... '[T]he purpose is to help individual reintegrate into society as constructive individuals as soon as they are able'. The duty and attitude of the probation or parole officer reflect this purpose....While the parole or probation officer recognizes his double duty to the welfare of his clients and to the safety of the general community, by and large concern for the client dominates his professional attitude. The parole agent ordinarily defines his role as representing his client's best interests as long as these do not constitute a

threat to public safety." *Gagnon v. Scarpelli.* 411 U.S. at 783–845, (quoting

*Morrissey v. Brewer,* 408 U.S. at 477 and F. Remington *et al.* Criminal Justice

Administration, Materials and Cases (1969)).

**Procedures that satisfy Due Process**

The sentencing guidelines sets forth three grades of supervised release

violations: GRADE A consist of A) a federal or state offense that is a i) crime

of violence, ii) is a controlled substance offense, iii) involves possession of a

firearm ... or B) any other federal or state or local offense punishable by a term

of imprisonment exceeding one year;  GRADE B consist of any other violation

punishable by a term of imprisonment exceeding one year; and GRADE C

consists of A) any other federal, state, or local offense punishable by a term of

imprisonment of a year or less, or (B) a violation of any other condition of

supervised release.  § 7B1.1(a).  "The probation officer shall promptly report

to the court any alleged Grade A or B violation."  §7B1.2(a).  A Grade C

violation requires mandatory "prompt" reporting to the court where "non-

reporting" presents an undue risk to an individual [the defendant himself

included] or the public or is inconsistent with any directives of the court related

to the reporting of the violation.  §7B1.2(b).  Comment to that section provides

an example of a minor traffic infraction where reporting by the probation officer to the court may not be mandatory. Upon a finding of a Grade A or B violation, the court shall revoke ... supervised release. §7B1.3.

The District Court was clear in its Judgment of 08/15/2005, that *addressing* Lee Underwood's admitted addiction was at the fore of the sentencing instructions and supervised release. Yet in the date specific presentence report, Lee Underwood's initial violation of his supervised release and the critical conduct of the probation officer as he was notified of Lee Underwood's violations of his supervised release ("Offense Conduct") is not recited in the Offense Conduct. ROA.21-30528.206. Instead it is tucked away in the recitation of Criminal History. ROA.21-30528.206-07. Nevertheless, the presentence report states that on May 13, 2020, Lee's custodial family member - his sister and her husband with whom Lee was living - contacted the probation officer with the information that Lee was using methamphetamine again, and he was no longer living with them at least on a full-time basis. May 13, 2020 represents the date the probation officer was notified of an "alleged GRADE A violation. At that moment, by statute and under the sentencing guidelines, the probation officer was required to "promptly report to the court" that Lee

Underwood was using methamphetamine again.  Lee Underwood's supervised release should have been revoked at that time.  Yet the probation officer failed to adequately respond.

The family again contacted the probation officer in late August, 2020, that the family had attempted unsuccessfully to force Lee into private treatment.  The family was desperate for help from the probation officer because the sudden unexpected death of Lee's father had exacerbated Lee's downward spiral into his "demon" addiction to meth, as he described it to the probation officer.  ROA.21-30528.209.

At this point the presentence report is suspiciously vague, absent specific dates, using passive voice.  The report mentions one court contact, COVID regulations, verbal reprimand, but fails to document accurately when, by whom, where, or  how, all of this occurred.  Indeed, there is zero information in the presentence report of the probation officer's response in line with his statutory and guidelines mandatory duties.  Furthermore, nowhere is there an order from the court relieving the probation officer of his statutory and guidelines mandatory duties for any reason in connection with a COVID protocol.

In fact it was not until November 19, 2020, more that six months after

Lee's sister called the probation officer and told him Lee was using methamphetamine again - a Grade A violation of Supervised Release - that the probation officer obtained a warrant for the arrest of Lee Underwood. By that time, tragically, Lee was living in a meth house with several other addicts, using and selling methamphetamine to support their habits.

This Court has recognized that a dely in executing a violator's warrant may frustrate a probationer's due process rights "if the delay undermines his ability to ... proffer mitigating evidence." *United States v. Tippens*, 38 F.3d 88, 90 (5th Cir. 1984). By failing to follow the statutory and guidelines mandated duties, the probation officer deprived Lee Underwood of his right to mitigation the damage of his addictive conduct, i.e. the conduct from May to November that formed the basis of the new indictment would not have occurred. The officer's dereliction of duty set Lee Underwood up to fail. Given that the court was aware and the probation officer was aware of Lee's severe addiction to methamphetamine, the court through its agent was also aware that once Lee started using the drug again, he would be - and was - doomed to fail. Lee's conduct after May 13, 2020, until his arrest for violation of supervised release on November 20, 2020, resulted in a new indictment, and ultimately a sentence

of 205 months to be served consecutively to the 35 month revocation sentence. ROA.21-30528.122. The probation officer's conduct was fundamentally unfair.

At the instant the probation officer received the phone call from Lee's sister on May 13, 2020, informing him that Lee Underwood was using methamphetamine once again, the probation officer was alerted to the fact that Lee Underwood "could not be counted on to avoid antisocial activity." Under *Morrissey v. Brewer*, failure of the probation officer to proceed immediately to revoke probation was inconsistent with and detrimental to the goals of the probation program. *Morrissey v. Brewer*, 408 U.S. at 479. Under *Tyler*, and *Tippens*, cited above, the probation officer's obvious decision not to initiation the process to petition the court to immediately revoke Lee's supervised release deprived Lee Underwood of any realistic opportunity to mitigate the consequences of his unlawful conduct, thereby denying him due process.

Under the plain error analysis, the failure of the probation officer to immediately notify the court and proceed with issuing the arrest warrant violated his statutory duties. His delay from May 13, 2020, to November 19, 2020, was plain and obvious. The result of the 6 month delay was that Lee's addictive, unlawful conduct during that time resulted in a new indictment, plea, and

sentence of an additional 205 month incarceration, in addition to the 35 month incarceration for his revocation sentence. His substantive rights were certain adversely affected. Failure of this Court to correct this mistake will seriously affect the fairness, integrity, and public reputation of judicial proceedings. The Court should vacate the Judgment, vacate the plea agreement, dismiss the Superseding Indictment of January 27, 2021, and remand the case to proceed absent penalty for conduct after May 13, 2020.

**B)      The sentence of 205 months as a result of the Superceding Indictment and plea agreement to counts 2 and 3 is substantively unreasonable.**

**Standard of Review: substantive reasonableness**

In the Defendant's Sentencing Memorandum, Lee Underwood argued to the court that a sentence above the guidelines range for Count 2 - Possession with Intent to Distribute Methamphetamine - was not warranted, that a guidelines range for Count 2 should be 84 - 105, (without the two point enhancement for obstruction of justice, giving a total offense level of 23, criminal history Category of V resulting in a guidelines range of 84 - 105 months). That sentence would run consecutively with 60 months for Count 3 - Possession of a Firearm in Furtherance of Drug Trafficking. At a minimum Lee would face 12 years incarceration. The court denied Lee Underwood's

objections, adopted the presentence report recommendations including considering an upward variance, and sentenced him to 20 months above the guidelines range of 100 to 125 months, in addition to the 60 months consecutive sentence for Court 3, totaling 205 months. The court then another consecutive sentence of 35 months for the revocation of supervised release: 242 months, or more than 20 years incarceration (Lee Underwood was 53 at the time of sentencing).

This court considers the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

**Law and Analysis**

A district court abuses its discretion where it does not take into account a factor that should have received significant weight, gives significant weight to an irrelevant or improper factor, or makes a clear error in judgment when balancing the sentencing factors. *United States v. Napper*, 978 F.3d 118, 124 (5th Cir. 2020);*United States v. Warren*, 720 F.3d 321,332 (5th Cir. 2013).

There are several errors in the district court's analysis. The district court apparently gave no weight to the fact that Lee Underwood had been incarcerated

from August 15, 2005 until October 21, 2019, in the Bureau of Prisons based on five prior criminal activity incidences involving methamphetamine. Instead, the court considered *all of the criminal activity* again at sentencing in 2021, even though the sentencing guidelines advised *not* to consider conduct outside the time prescribed for inclusion. The court's reasoning was that "the Criminal History Category [of V] substantially under-represents the seriousness of the defendant's criminal history and the likelihood the defendant will commit further crimes." ROA.21-30528.123. The court also turned a blind eye to the issue of Lee Underwood's severe addiction to methamphetamine as a factor in this court's sentencing, not weighing the defendant's own statement that methamphetamine was a "demon he struggles with daily." ROA.21-30528.209. Of course most importantly, the court never addressed the repeated failure of the probation officer, beginning May 13, 2020, to respond to the custodial family members alerts that Lee was using meth again, and again in August that they had failed to get him to agree to inpatient rehabilitation. Had the probation officer reported Lee's initial violation of his supervised release as the guidelines and statute mandate, and had the supervision been revoked at that time, the Indictment of 01/27/2021, would have been avoided.

Yet, the district court imposed a substantial upward variance based on criminal conduct that occurred after the probation officer failed in his duties beginning May 13, 2020. Ironically, in ¶¶ 105, 106 of the presentence report the probation officer actually recommended the district court consider an upward variance on top of the sentence that resulted from that office's dereliction of duty. In so doing, the district court erroneously ignored Lee Underwood's addiction problem and excessively punished the resulting conduct instead, with no curiosity or inquiry into how the violations were allowed to progress to that point. Lee Underwood was 53 years old at the time of sentencing. This court imposed a de facto life imprisonment sentence for Lee Underwood arising from the failure of the probation officer to perform his mandatory duties.

Because the district court failed to take these relevant factors into account, and because the court gave too much weight to past conduct the sentencing guidelines state should not be considered, the court's reasoning cannot logically serve as a proper basis for the sentence. In other words, the district court imposed a substantively unreasonable sentence by giving "significant weight to an irrelevant or improper factors, and by failing to take into account a factor that should have received significant weight." Hence, the sentence is substantively

unreasonable and must be vacated.

## CONCLUSION

For all of the reasons set forth in this Original Brief, Mr. Underwood prays that this Court vacate the Judgment of the District Court, and remand the case to the district court for further proceeding not inconsistent with this opinion.

If the Court finds that Lee Underwood's due process rights were not violated, then Lee Underwood prays that the Court find the sentence to be substantively unreasonable, and vacate the Judgment and remand for further proceeding not inconsistent with this opinion.

Respectfully Submitted,

 /s/ Elizabeth Cary Dougherty

Elizabeth Cary Dougherty, Bar No. 23040
The Dougherty Law Firm, LLC
P.O. Box 80419
Baton Rouge, Louisiana 70898-0419
(225) 205-7937 (Phone)
Attorney for the Defendant-Appellant

## CERTIFICATE OF SERVICE

I hereby certify on this the __4[th] day of___ July, 2022, I electronically filed the foregoing Original Brief on Behalf of Lee Underwood with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that the pleading was served simultaneously via the appellate CM/ECF system on the counsel of record for the United States listed below, and I further certify that she is enrolled as counsel of record with the Fifth Circuit in this matter.

Camille Domingue
Assistant United States Attorney
United States Attorney's Office
Lafayette, LA


/s/ Elizabeth Cary Dougherty_____

Attorney for the Defendant-Appellant

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains _5,316__ words.

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P.32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word Perfect in Times New Roman font15-point type face.

/s/ Elizabeth Cary Dougherty_____
Attorney for the Defendant-Appellant
Dated: July __4th___, 2022.