# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

_____

**No. 21-30518**
**consolidated with**
**No. 21-30528**

_____

## UNITED STATES OF AMERICA,

Plaintiff-Appellee

**v.**

## LEE E. UNDERWOOD, JR.,

Defendant-Appellant

Appeal from the United States District Court for the
Western District of Louisiana
CRIMINAL NUMBERS 3:04-CR-30059-1 and 3:21-CR-16-1

_____

## BRIEF ON BEHALF OF APPELLEE,
## THE UNITED STATES OF AMERICA

_____

BRANDON B. BROWN
United States Attorney
Western District of Louisiana

CAMILLE A. DOMINGUE (#20168)
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501
(337) 262-6618
Attorneys for Plaintiff-Appellee

## STATEMENT REGARDING ORAL ARGUMENT

This appeal presents one issue raised for the first time concerning whether the probation officer violated a duty to promptly report violations of supervised release to the district court, and one issue regarding the substantive reasonableness of an above-guideline sentence. The parties' arguments are adequately set forth in their briefs, and the United States respectfully suggests that oral argument would not assist the Court in this matter.

# TABLE OF CONTENTS

**PAGES**

STATEMENT REGARDING ORAL ARGUMENT ................................... i

TABLE OF AUTHORITIES .................................................... v

STATEMENT OF JURISDICTION ....................................... 1

ISSUES ON APPEAL ....................................................... 2

STATEMENT OF THE CASE ............................................. 3

    *Conduct on Supervised Release* ......................................... 3

    *New Criminal Conduct* ................................................ 10

    *Indictment and Guilty Plea (New Criminal Conduct)* .................. 12

    *Pre-Sentence Investigation Report (New Criminal Conduct)* ........ 12

    *Joint Revocation and Sentencing Proceeding* ............................. 14

SUMMARY OF THE ARGUMENT ....................................... 19

ARGUMENT ................................................................. 21

    I.    Particularly in light of the applicable plain error
          standard, the defendant is not entitled to relief from
          either judgment on his claim the probation officer
          denied him due process when, instead of immediately
          seeking revocation of his supervised release, he
          sought a district court order modifying the conditions
          of supervised release and made efforts to arrange for
          inpatient drug treatment ....................................... 21

# TABLE OF CONTENTS *(continued)*

**PAGES**

A.  Standard of Review ......................................................21

B.  Applicable Substantive Law ........................................22

C.  Application of the Law to the Record Evidence...........24

II.  The district court did not abuse its discretion when it departed upwardly, under U.S.S.G. § 4A1.3, from an advisory range of 100-125 months to a sentence of 145 months.  The  district court properly relied on the defendant's extensive criminal history, including prior, uncounted convictions for conduct identical to the offense of conviction, as well as the fact that the defendant committed the instant offense while on supervision for a prior methamphetamine conviction for which he had served a 210-month sentence, all relevant considerations under 18 U.S.C. § 3553(a)(1)..........30

A.  Standard of Review ......................................................30

B.  Applicable Substantive Law ........................................31

    1.  *Reasonableness*...................................................31

    2.  *Departures based on understated criminal history (U.S.S.G. § 4A1.3)*..................................32

C.  Application of the Law to the Record ..........................33

# TABLE OF CONTENTS *(continued)*

**PAGES**

CONCLUSION ........................................................................ 41

CERTIFICATE OF SERVICE and
    COMPLIANCE WITH ECF FILING STANDARDS ..................... 42

CERTIFICATE OF COMPLIANCE......................................................... 43

# TABLE OF AUTHORITIES

**PAGES**

<u>FEDERAL CASES</u>

*De Zavala v. Ashcroft,*
  385 F.3d 879 (5th Cir. 2004) ........................................................ 21

*Puckett v. United States,*
  556 U.S. 129 (2009) ...................................................................... 22

*United States v. Alvarado,*
  691 F.3d 592 (5th Cir. 2012) ........................................................ 39

*United States v. Booker,*
  543 U.S. 220 (2005) .......................................................... 26, 31-32

*United States v. Brantley,*
  537 F.3d 347 (5th Cir. 2008) .................................................. 31, 39

*United States v. Brooker,*
  858 F.3d 983 (5th Cir. 2017) ........................................................ 24

*United States v. Daughenbaugh,*
  49 F.3d 171 (5th Cir. 1995) .......................................................... 40

*United States v. Goynes,*
  432 F. App'x 362 (5th Cir. 2011) ................................................. 37

*United States v. Jones,*
  444 F.3d 430 (5th Cir. 2006) ........................................................ 39

*United States v. Lambert,*
  984 F.2d 658 (5th Cir. 1993) ........................................................ 33

*United States v. Lucas,*
  849 F.3d 638 (5th Cir. 2017) ........................................................ 26

## TABLE OF AUTHORITIES *(continued)*

**PAGES**

*United States v. Mares,*
   402 F.3d 511 (5th Cir. 2005) ........................................................ 29

*United States v. McElwee,*
   646 F.3d 328 (5th Cir. 2011) ........................................................ 39

*United States v. Palacios Pena,*
   402 F. App'x 858 (5th Cir. 2010) ................................................. 37

*United States v. Queen,*
   561 F. App'x 435 (5th Cir. 2014) ................................................. 26

*United States v. Saldana,*
   427 F.3d 298 (5th Cir. 2005) .............................................. 30-31, 40

*United States v. Sealed Juvenile 1,*
   359 F. App'x 498 (5th Cir. 2010) ............................................. 37-38

*United States v. Smallwood,*
   920 F.2d 1231 (5th Cir. 1991) ...................................................... 30

*United States v. Smith,*
   417 F.3d 483 (5th Cir. 2005) ........................................................ 40

*United States v. Smith,*
   440 F.3d 704 (5th Cir. 2006) ....................................... 31-32, 39-40

*United States v. Tang,*
   718 F.3d 476 (5th Cir. 2013) ........................................................ 22

*United States v. Zuniga-Peralta,*
   442 F.3d 345 (5th Cir. 2006) ........................................................ 30

## TABLE OF AUTHORITIES *(continued)*

**PAGES**

### FEDERAL STATUTES

18 U.S.C. § 924(c) ........................................................ 12-13, 16

18 U.S.C. § 3231 ..................................................................... 1

18 U.S.C. § 3553(a) ................................................ 2, 16-18, 21, 31-32, 38

18 U.S.C. § 3553(a)(1) ...................................................... 30-31

18 U.S.C. § 3553(a)(2) ...................................................... 30, 40

18 U.S.C. § 3582(c)(2) ............................................................ 3

18 U.S.C. § 3583(d) ........................................................ 24, 28

18 U.S.C. § 3583(e)(2) ........................................................... 23

18 U.S.C. § 3583(e)(3) ........................................................... 23

18 U.S.C. § 3583(g) ...................................................... 23-24, 28

18 U.S.C. § 3602 .................................................................. 22

18 U.S.C. § 3603(2) ......................................................... 23, 25

18 U.S.C. § 3603(3) ....................................................... 22-23, 26

18 U.S.C. § 3742(a) ............................................................... 1

18 U.S.C. § 3742(j)(1) .......................................................... 31

## TABLE OF AUTHORITIES *(continued)*

**PAGES**

21 U.S.C. § 841(a)(1)..................................................................... 12

21 U.S.C. § 841(b)(1)(B)(viii) .................................................... 12

21 U.S.C. § 846 .......................................................................... 3

28 U.S.C. § 1291 ....................................................................... 1

## U. S. SENTENCING GUIDELINES

U.S.S.G. § 2D1.1(a)(5) ............................................................. 12

U.S.S.G. § 3C1.1 ...................................................................... 13

U.S.S.G. § 3E1.1 ...................................................................... 13

U.S.S.G. § 4A1.3 ........................................................... 16, 30, 32-33

U.S.S.G. § 4A1.3(A)(2)(A) ....................................................... 32

U.S.S.G. § 4A1.3(A)(4)(A) ....................................................... 32

U.S.S.G. § 7B1.2(a) ................................................................. 26

# STATEMENT OF JURISDICTION

These consolidated appeals concern, respectively, a revocation judgment and a judgment of conviction on new criminal conduct that, in part, formed the basis for revocation. The district court had subject matter jurisdiction as to both under 18 U.S.C. § 3231. That court entered both judgments on August 19, 2021. That same day, the defendant filed a notice of appeal as to each judgment. ROA.21-30518.263; ROA.21-30528.64. The United States Court of Appeals for the Fifth Circuit exercises jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## ISSUES ON APPEAL

I.    Under the plain error standard, is the defendant entitled to relief from either judgment based on his claim his probation officer denied him due process by not immediately seeking revocation of his supervision and instead making efforts to afford him drug treatment?

II.    Is the 145-month sentence imposed on the defendant on his conviction for possession of methamphetamine with intent to distribute, a 16% upward deviation from the advisory range of 100-125 months, substantively reasonable, where the court expressly relied on sanctioned considerations under 18 U.S.C. § 3553(a), including the defendant's history of similar offenses; the fact that some of his prior convictions were not counted towards his criminal history score; and the fact that even a prior 210-month federal sentence had failed to deter the instant violation?

# STATEMENT OF THE CASE

## *Conduct on Supervised Release[1]*

On March 28, 2005, Lee E. Underwood, Jr., pleaded guilty to one count of conspiracy to possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846 (Count 1).  ROA.21-30518.64.  On August 15, 2005, he was sentenced on that charge to 262 months' imprisonment, followed by five years' supervised release.  ROA.21-30518.88, 89-91.   Among his conditions of release was one prohibiting him from committing new criminal conduct; one prohibiting him from using, possessing, or distributing controlled substances; one requiring him to submit to drug screens; and one requiring him to submit a truthful monthly report to his probation officer.  ROA.21-30518.91-92.  On January 9, 2017, Underwood's sentence was reduced, pursuant to 18 U.S.C. § 3582(c)(2), to 210 months.  ROA.21-30518.244.

---

[1] The summary of Underwood's conduct on supervised release derives from pleadings in the record concerning his supervision and the probation officer's supervision notes, the latter of which were added to the record on appeal on the unopposed motion of the United States.

The defendant commenced his term of supervised release on October 31, 2019.  ROA.21-30518.248.  Initially, he performed well on supervision:  he moved in with his sister's family into a safe environment; he maintained employment within the district, though he pushed for permission to work out-of-state; his drug screens were negative; and he submitted monthly reports, though sometimes without attaching pay stubs.  ROA.21-30518.503-11.  During that time, his U.S. Probation Officer was in contact with him regularly; initially, some contacts were in person, but following the COVID-19 outbreak, all contact was by telephone.  ROA.21-30518.506-07, 509-10.

On May 13, 2020, however, Underwood's sister called his probation officer and advised him that she believed Underwood had resumed using drugs, possibly Lortab.  His sister attributed this to the recent death of their father.  Underwood's sister also reported that for the previous six weeks, Underwood had been staying with his girlfriend at a residence in Downsville, Louisiana, rather than at her home, and that he had been "associating with several negative individuals."  Finally, his sister advised the probation officer that Underwood had taken out a $60,000 loan from a bank a few months earlier, and as of the time of her report,

he had spent $49,000 of the loan proceeds. The probation officer advised Underwood's sister that he was unable to make an in-person visit to investigate her suspicions during the pandemic and was uncertain when that restriction would be lifted, but he would closely monitor the situation. She stated that she understood and asked the officer not to tell Underwood that she was the one who had alerted him to Underwood's conduct. ROA.21-30518.245, 512.

In late August of 2020, the probation officer contacted Underwood's sister to follow up on the situation. Underwood's sister stated that her family had twice tried to place him an inpatient treatment facility, but he had refused to go. She advised he had "packed his bags," left her home, and was living in another parish. She also stated that she believed he was still using drugs. ROA.21-30518.245, 513.

That same day, the probation officer contacted Underwood by telephone. Underwood initially lied to the officer, asserting he was still living with his sister and denying any drug use. When the probation officer revealed, however, that his sister was the one who had reported Underwood's violations, Underwood conceded he had been living somewhere else for about two weeks, and that he had used

methamphetamine daily since the death of his father.  After making that admission, Underwood began to cry; the probation officer stressed that he "was not trying to revoke his supervision, but instead trying to help him."  The officer explained he would have to report the violations to the court, but that his "main objective was to get [Underwood] the help he needs."  ROA.21-30518.245-46, 513.

On September 4, 2020, the probation officer filed in the district court record a "Request for Modifying the Conditions of Supervision."  In that filing, he advised the district court, among other things, of the events that had transpired since May 13, 2020, the day Underwood's sister had advised him about Underwood's conduct, noting the various conditions of supervision Underwood had allegedly violated.  In the light of those developments, the officer sought modification of the conditions of supervision, recommending the addition of a condition requiring the defendant to participate in drug treatment.  ROA.21-30518.245-58.  On September 10, 2020, the district court granted that request, modifying Underwood's conditions as specified in the petition.  ROA.21-30518.247.

Between September 15, 2020, and October 9, 2020, Underwood's probation officer made various efforts to obtain drug treatment for him. On September 15, 2020, the probation officer received an assessment report from a treatment specialist; the specialist noted that Underwood was under the influence of Lortab at the time of assessment and recommended inpatient treatment. That same day, the probation officer contacted Pecan Haven treatment facility but was told that facility could not accept Underwood until he applied for Medicaid. The probation officer then called Underwood to discuss the Medicaid issue; Underwood claimed he had not applied because he did not believe it would "do anything for him." During that same call, Underwood admitted to the probation officer that he had been living with his girlfriend and using drugs with her. He claimed, however, that he planned to break up with the woman and return to his sister's house. ROA.21-30518.515.

Later that same day, the probation officer consulted with a substance abuse specialist in the U.S. Probation Office; she urged him to ask Underwood's family to assist him in applying for Medicaid, and to give Underwood a week to supply proof he had done so. The probation officer did this, advising Underwood that if he did not supply proof of an

application by the coming Friday (September 18, 2020), he would ask the judge to "summons [him] … to explain why he is putting this off." ROA.21-30518.515.  The next day, the probation officer also advised Underwood's sister of this deadline.  ROA.21-30518.516.

On Monday, September 21, 2020, a few days past Underwood's Friday deadline, the probation officer contacted the Pecan Haven treatment facility to determine if Underwood's Medicaid benefits had been activated.  An intake specialist advised that as of that point, they had not.  ROA.21-30518.517.

Later that week, the probation officer contacted another treatment facility, New Day Recovery.  By that time, Underwood's benefits had been activated, and so the officer sent them a copy of Underwood's assessment. He then contacted Underwood and instructed him to make an appointment there.  Underwood stated he would do so.  In that same conversation, Underwood admitted he had tried using drugs intravenously, but that he did not like the way it made him feel.  ROA.21-30518.517.

In a conversation later that same day, the probation officer learned from Underwood's sister than he had recently sold a trailer for $6,200, and that after doing so, he had left her house for a week. Suspecting Underwood was selling drugs, the probation officer contacted an agent of the Drug Enforcement Administration (DEA) and provided him with Underwood's name and address. ROA.21-30518.517.

In a conversation on October 9, 2020, Underwood's sister told the probation officer that Underwood was mad about having to participate in substance abuse treatment. ROA.21-30518. When the officer spoke to a treatment specialist at New Day Recovery, the specialist reported that Underwood had tested positive for several controlled substances during a September 30, 2020, assessment appointment. Further, Underwood had told the treatment provider that he could not participate in inpatient treatment because he was self-employed; that statement was false, because he was working for his sister at the time. The treatment provider also reported he had recommended Underwood attend intensive outpatient sessions instead. Underwood never did. ROA.21-30518.518.

On October 14, 2020, Underwood's probation officer filed a "Petition for Warrant or Summons for Offender Under Supervision," asserting

Underwood had violated the conditions of his supervised release by refusing to participate in substance abuse treatment, and by failing to report the $6,200 sale of a trailer on his monthly supervision report. ROA.21-30518.248-49.    That same day, the district court issued a warrant for Underwood's arrest based on those allegations.    ROA.21-30518.251.

### *New Criminal Conduct*[2]

On November 19, 2020, members of the Ouachita Parish Sheriff's Office Warrant Division, working in concert with the U.S. Marshals Service, formulated a plan to execute the supervised release revocation warrant on Underwood at his residence in Eros, Louisiana.    The next day, aware of intelligence suggesting Underwood had firearms and drugs in the house, law enforcement agents breached the door and entered.    In the master bedroom, they found Underwood near a window; a .35 caliber Whalen Stalker Rifle was propped up near the window, and a round of ammunition was on the windowsill.    Underwood was arrested without incident.    ROA.21-30528.197.

---

[2] The summary of the new criminal conduct derives from the PSR issued in that matter.    ROA.21-30528.196-200.

When agents observed a GSG Firefly .22 caliber pistol, methamphetamine, and drug paraphernalia on the nightstand, they Mirandized and questioned Underwood, who admitted he had approximately a half an ounce of methamphetamine in a safe in his bathroom. Agents obtained a state search warrant and later searched the house, recovering from Underwood's bedroom, bathroom, and vehicle methamphetamine packaged in individual baggies. Agents also recovered hydrocodone pills and marijuana. ROA.21-30528.197-99. Underwood was responsible for 28 grams (actual) of methamphetamine found in the house.[3] ROA.21-30528.197, 200.

Underwood made his initial appearance on the supervised release revocation warrant on November 23, 2020. He was ordered detained pending a final revocation hearing. ROA.21-30518.257-58. During a recorded conversation from the local jail on December 4, 2020, Underwood instructed an unidentified man to tell the DEA that the

---

[3] Two women were in the house with Underwood at the time the warrant was executed, and some of the methamphetamine, assorted pills, heroin, and fentanyl was found in areas of the house occupied by them, or in personal items like their purses. In all, 261.265 grams of methamphetamine (actual), .47 grams of marijuana, 1.25 grams of heroin, and 6.11 grams of fentanyl were found in the house. The 28 grams of actual methamphetamine for which Underwood was held responsible at sentencing was the quantity stipulated by the parties and accepted by the district court. ROA.21-30528.198-200.

firearms found during the search of the house belonged to him and not Underwood, and that he had placed them there without Underwood's knowledge. ROA.21-30528.200.

## *Indictment and Guilty Plea (New Criminal Conduct)*

On April 28, 2021, Underwood was charged in a superseding indictment with, among other offenses, one count of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii) (Count 2), and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 3). ROA.21-30528.34. On May 11, 2021, Underwood pleaded guilty to those charges in exchange for the United States' promise to dismiss other charges in the same indictment and not to pursue a statutory sentencing enhancement. ROA.21-30528.41-42, 130-31.

## *Pre-Sentence Investigation Report (New Criminal Conduct)*

The final version of the Pre-Sentence Report ("PSR"), which was prepared using the 2018 version of the guidelines, recommended a base offense level of 26, pursuant to U.S.S.G. § 2D1.1(a)(5), which is the provision that applies when the defendant is convicted of a

methamphetamine offense involving at least 20 grams but less than 35 grams of actual methamphetamine. ROA.21-30528.200-01. To that value, two levels were added, pursuant to § 3C1.1, because the defendant attempted to obstruct justice, and three levels were subtracted, pursuant to § 3E1.1, for the defendant's timely acceptance of responsibility, producing at a total offense level of 25 as to the drug trafficking count (Count 2). ROA.21-30528.201. As to the § 924(c) count, Count 3, the PSR noted the guideline range was the minimum term of imprisonment required by statute—60 months. ROA.21-30528.201.

With regard to Underwood's criminal history score, he was assessed 9 criminal history points for 11 prior convictions. Five of those convictions were for offenses involving methamphetamine, including three felonies. ROA.21-30528.202-06. He received two additional points because he committed the instant offense while still serving the sentence for his federal methamphetamine conspiracy conviction, resulting in 11 criminal history points and a Criminal History Category V. ROA.21-30528.207.

Underwood's total offense level 25 and Criminal History Category V produced a guideline range of 100-125 months' imprisonment. ROA.21-30528.210.  He faced a statutory penalty of not less than 5 years and no more than 40 years on the drug count, and not less than five years, consecutive, on the firearm count. ROA.21-30528.210.  In a section of the PSR titled, "Factors That May Warrant Departure," the probation identified as a ground for upward departure the fact that many of Underwood's prior convictions received no criminal history points due to their age.  ROA.21-30528.213-14.

### *Joint Revocation and Sentencing Proceeding*

On August 11, 2021, Underwood's U.S. Probation Officer filed an "Amended Petition for Warrant or Summons for Offender Under Supervision" that alleged he had violated specified conditions of supervision by testing positive for various controlled substances; possessing controlled substances and firearms on the day he was arrested on the revocation warrant; and later pleading guilty to drug and gun charges.  ROA.21-30518.66-67.  That same day, the district court signed an order reflecting the amended petition would be considered at the revocation hearing.  ROA.21-30518.469.

In anticipation of sentencing on the new criminal conduct, the defendant filed a sentencing memorandum. Asserting that his criminal history was "inextricably linked to [his] substance abuse issues," and that there was "little evidence that a more severe sentence is needed in order to remind [him] of the gravity of his mistakes or the error of his ways," he urged the court to impose a sentence below the advisory range. ROA.21-30528.277-81.

On August 18, 2021, the district court conducted a combined hearing at which it addressed the allegations in the revocation petition, and sentencing on Underwood's new criminal conduct.[4] ROA.21-30518.344. Beginning first with the revocation matter, the court confirmed that Underwood intended to admit the alleged violations of supervised release. 21-30518.348. Defense counsel did so, noting the defendant's stipulation offered in connection with his guilty plea to the new crimes. ROA.21-30518.348; ROA.21-30528.138-39. The court thus found Underwood had violated his supervised release, recognizing his

---

[4] The transcript of this combined proceeding appears in the record on appeal in both cases. In this brief, all citations are the version appearing in the lead case, No. 21-30518.

statutory maximum penalty was 60 months, and his advisory revocation range was 30-37 months.  ROA.21-30518.348-49.

Noting it intended to sentence the defendant at the same time on both the revocation violations and the new crimes, the court then resolved the defendant's objections to the PSR issued on the new criminal conduct.[5]  ROA.21-30518.351-58.  The court then invited the defendant, defense counsel, and government counsel to offer further statements in connection with sentencing; all three declined.  ROA.21-30518.359.

After reviewing the applicable guideline ranges and referencing 18 U.S.C. § 3553(a), the court sentenced Underwood to 145 months' imprisonment on the drug count (Count 2), a 16% upward departure under U.S.S.G. § 4A1.3, and 60 months' imprisonment on the § 924(c) count (Count 3), the statutory minimum, with the two sentences to be served consecutively as required by statute.  ROA.21-30518.360-62.  The

---

[5] The United States did not object to the PSR.  ROA.21-30528.215.  Though the defendant filed various objections, ROA.21-30528.215-17, none is at issue on appeal. In lieu of filing its own sentencing memorandum, the United States used its response to Underwood's objections to agree with the probation officer that an upward departure would be authorized under the guidelines because the defendant's Criminal History Category V understated the seriousness of his criminal history. ROA.21-30528.275.

court also imposed concurrent five-year terms of supervised release.
ROA.21-30518.363.

In support of the upward departure on the drug count, the court
stated its finding that "the guideline ranges do not reasonably address
the real conduct of defendant, achieve[ ] the goals of section 3553(a) and
provide an appropriate sentence." Specifically, the court noted the
defendant's Criminal History Category V "substantially underrepresents
the seriousness of the defendant's criminal history and the likelihood the
defendant will commit further crimes." ROA.21-30518.360-61. The court
detailed various aspects of Underwood's record it found especially
troubling: that he had five prior convictions for methamphetamine-
related offenses, including three prior felony convictions; that three prior
convictions (two of the methamphetamine trafficking convictions and one
perjury conviction) had not been assessed any criminal history points due
to their age, and if they had, he likely would have amassed 20 criminal
history points; and that Underwood had committed the instant
methamphetamine trafficking offense even after serving a 210-month
sentence on a prior federal conviction for the same offense. ROA.21-
30518.361-62. The court thus concluded that Underwood was a "major

drug dealer" who, undeterred by even that 210-month prior sentence, was "going to keep on dealing meth." ROA.21-30518.362.

As to the revocation conduct, the court sentenced Underwood within the advisory range to 35 months, to be served consecutively to the sentence imposed on the new criminal conduct. The court noted that sentence had also been selected "after considering the factors contained in 18 U.S.C., Section 3553(a) concerning defendant's criminal history, personal characteristics and involvement in the instant offense." ROA.21-30518.363. The defendant contemporaneously objected to the sentence on the same grounds urged in his objections to the PSR and his sentencing memorandum. ROA.21-30518.365. At no point did he object to the timing of the probation officer's disclosure to the court of the conduct supporting revocation.

The district court entered both judgments on August 19, 2021. On that same day, the defendant filed both notices of appeal. ROA.21-30518.262; ROA.21-30528.64.

## SUMMARY OF THE ARGUMENT

Underwood is not entitled to relief on his claim, raised for the first time on appeal, that the probation officer violated his due process rights by not immediately reporting his purported drug use to the district court and seeking prompt revocation. First, there was no error at all, much less a plain or obvious one, as aside from a non-binding sentencing guidelines provision, the defendant cites no authority requiring an immediate report to the district court. And the fact that this Court has never addressed this contention in an opinion of any kind precludes a finding of "clear or obvious" error. Regardless, the record as supplemented on appeal reflects the probation officer acted properly within his broad grant of authority to manage supervisees by attempting instead to secure inpatient drug treatment rather to seek immediate revocation of supervision.

But, even if the probation officer somehow clearly erred, the defendant cannot establish an effect on his substantial rights by showing how that error affected the outcome of his case. The district court had the discretion not to revoke the defendant's supervised release upon a finding that he had not yet been afforded an opportunity for treatment,

and that is exactly what the court did when the probation officer notified him of the violation a few months after he had learned of it. The defendant offers nothing to suggest the court would have rendered a different decision a few months earlier had it been informed of the violations at that time.

The district court imposed a substantively reasonable, above-guideline sentence on Underwood's new criminal conduct based on its belief that the defendant's Category V designation did not adequately reflect his criminal history or risk of recidivism. The court's conclusion in that respect is demonstrably correct, as the PSR reflects a long history of criminal convictions, including three prior felony convictions for methamphetamine trafficking, and that even a 210-month prior federal drug sentence had been ineffective in deterring the new criminal conduct.

There is no merit to Underwood's assertion the district court gave too little weight to his proffered grounds in mitigation of sentence, namely his persistent methamphetamine addiction, the fact that he had already served significant time for methamphetamine offenses, and the probation officer's purported "failure" to seek revocation of his supervision earlier. All those considerations were before the court; the

court simply opted not to afford them controlling weight. That was within the district court's discretion, as it is well-settled that while the district court must consider all the § 3553(a) factors, it is not required to give "incommensurable factors" equal weight.

Finally, the extent of the departure—16% from the high end of the 100-125 month range—is smaller than other departures and deviations affirmed by this Court.

**ARGUMENT**

**I. Particularly in light of the applicable plain error standard, the defendant is not entitled to relief from either judgment on his claim the probation officer denied him due process when, instead of immediately seeking revocation of his supervised release, he sought a district court order modifying the conditions of supervised release and made efforts to arrange for inpatient drug treatment.**

**A.    Standard of Review**

Typically, whether a defendant was denied due process of law is a question of law reviewed *de novo*. *De Zavala v. Ashcroft*, 385 F.3d 879, 883 (5th Cir. 2004).

However, as the defendant concedes, because he failed to raise this objection below, review is for plain error only. *Puckett v. United States*, 556 U.S. 129, 135 (2009). Under that standard, the defendant must show an error or defect that is "clear" or "obvious," and that "affected the outcome of the district court proceedings." *Id*. Even if all of those requirements are satisfied, the court of appeals has the discretion to remedy the error—"discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id*. Satisfying all four prongs is "difficult, as it should be." *Id*.

## B.    Applicable Substantive Law

Probation officers are appointed by the district court and serve "within the jurisdiction and under the direction of the court making the appointment." 18 U.S.C. § 3602. They "have broad statutory authority to advise and supervise persons on supervised release to improve the releasees' conduct and lives …." *United States v. Tang,* 718 F.3d 476, 488 (5th Cir. 2013). In furtherance of that goal, they may "use all suitable methods, not inconsistent with the conditions specified by the court, to aid a probationer or a person on supervised release who is under his

supervision, and to bring about improvements in his conduct and condition." 18 U.S.C. § 3603(3). Further, they must "keep informed, to the degree required by the conditions specified by the sentencing court, as to the conduct and condition of a probationer or a person on supervised release, who is under his supervision, and report his conduct and condition to the sentencing court." 18 U.S.C. § 3603(2).

At any time during the term of supervision, the court may "modify, reduce, or enlarge the conditions of supervised release." 18 U.S.C. § 3583(e)(2). Further, "if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release," it may revoke the term of supervision and require the defendant to serve additional time in prison, with the maximum term upon revocation dependent upon the classification of the original offense of conviction. 18 U.S.C. § 3583(e)(3). In certain circumstances, revocation is apparently mandatory; for example, the district court "shall" revoke supervised release if a defendant unlawfully possesses a controlled substance, refuses to comply with drug testing, or tests positive more than three times in a year.

18 U.S.C. § 3583(g).  In considering whether to grant an exception to that requirement as to a defendant who fails a drug test, however, "[t]he court shall consider . . . the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs ...."  18 U.S.C. § 3583(d); *United States v. Brooker*, 858 F.3d 983, 985-87 (5th Cir. 2017) (discussing the "treatment exception" to mandatory revocation).

## C.    Application of the Law to the Record Evidence

For the first time on appeal, Underwood asserts the probation officer, acting as an arm of the court, denied him due process when he failed to immediately report his drug use to the district judge.  Indeed, he ultimately traces his new criminal conviction to that initial failure: had the probation officer promptly reported the alleged violation, he would have been revoked at an earlier time, thus interrupting the chain of events that lead to his new criminal conviction.  Brief at pp. 11-21. Beyond improperly attempting to shift responsibility for his own poor decisions to the probation officer, Underwood's argument misunderstands the role of the probation officer and the relevant facts

related to Underwood's course on supervision, as well as the operation of the revocation statutes.

First, particularly in light of the plain error standard of review, the probation officer was not derelict in his duty to keep the district court informed of Underwood's progress while on supervised release. Contrary to the defendant's assertion in his brief that the record is "suspiciously vague" regarding the date and manner in which the court was notified, brief at p. 18, the record reflects the probation officer advised the district court of Underwood's problems on supervision no later than September 4, 2020, when he sought modification of the conditions of supervision in a detailed petition.[6]     ROA.21-30518.245.     The applicable statute, 18 U.S.C. § 3603(2), requires only that the officer "report [the supervisee's] conduct and condition to the sentencing court."     That

---

[6] Underwood criticizes the PSR issued on the new criminal conduct for failing to provide detailed information regarding how and when the probation officer notified the court of Underwood's supervised release violations. Brief at p. 18. But that PSR was intended to inform the court's sentencing decision *on the new crimes*, not recount Underwood's progress on supervised release. A better source of information on Underwood's conduct on supervised release is the probation officer's actual filings with the district court. The record on appeal in case number 21-30518 includes three such filings: a request to modify the conditions of release, the original revocation petition, and the amended revocation petition. ROA.21-30518.245-46, 248-49, 466. An even more complete picture is presented by the probation officer's chronological notes of his interactions with Underwood; those were added to the record on appeal on the United States' unopposed motion. ROA.21-30518.502-22.

statute provides no mandatory time frame, and while U.S.S.G. § 7B1.2(a) suggests violations should be reported "promptly," that provision is, and always has been, a non-binding policy statement. *United States v. Queen*, 561 F. App'x 435, 436 (5th Cir. 2014) (noting that "[e]ven before *Booker*, the supervised-release-violation policy statements were advisory only"). That this Court has never addressed, even in an unpublished opinion, what constitutes an "untimely" report by a probation officer dooms Underwood's argument on plain error review. *See United States v. Lucas*, 849 F.3d 638, 645 (5th Cir. 2017) (recognizing "[a]n error is not plain under current law if a defendant's theory requires the extension of precedent," or if "[w]e have not directly addressed the defendant's theory in the past").

Regardless, in the light of the probation officer's statutory duty to "bring about improvements in [the supervisee's] conduct and condition," 18 U.S.C. § 3603(3), the officer's handling of Underwood's case was entirely appropriate. As set forth in detail above, the probation officer's notes confirm he worked hard, sometimes under pandemic-related constraints, to make sure Underwood had a safe and stable place to live;

that he maintained suitable employment; and that he remained drug-free.  ROA.21-30518.503-12.  When in May of 2020, about four months into Underwood's supervision and in the middle of the COVID-19 shutdown, Underwood's sister advised the probation officer that she suspected the defendant had been abusing Lortab and associating with unsavory characters, the officer told her he could not confirm her suspicions until pandemic-related conditions permitted personal contacts.  ROA.21-30518.512.  Later, after the probation officer had received another report of possible drug use by Underwood, he spoke to Underwood by telephone, specifically asking him if he had used drugs.  ROA.21-30518.513.  When Underwood, after initially lying to the officer and denying using drugs, tearfully admitted his failing, the officer "explained … that his violations [would] be reported to the court" but assured him his "main objective [was] to get [him] the help [he] need[ed]."  ROA.21-30518.513.

Thereafter, the notes reflect the probation officer made consistent efforts to do just that.  First, he reported the violation to the district court along with a request that the conditions of supervision be modified to require treatment; when the court approved the change, he worked

diligently to find Underwood a spot in an inpatient treatment program. ROA.21-30518.245-46, 513-18.  Ultimately, it was not the probation officer's conduct that dictated Underwood's failure on supervision, but his own refusal to participate in treatment and his poor decision to continue using and selling methamphetamine.  ROA.21-30518.518.  Underwood cannot plausibly cast his own recalcitrance as his probation officer's due process violation.

But even assuming the probation officer somehow erred, and that error was "clear or obvious" under current law, the defendant cannot establish an effect on his substantial rights by showing it changed the outcome of the proceedings.  Contrary to Underwood's suggestion in his brief, an earlier report of Underwood's drug use most likely would not have resulted in an earlier revocation.  As noted, § 3583(g) instructs the district court, when considering whether to apply the "mandatory" revocation provisions of § 3583(g), to consider "the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs." 18 U.S.C. § 3583(d).  The record confirms the district court, when advised of the violations in early September of 2020, opted to modify supervised release rather than revoke

supervision, and thus to afford the defendant an opportunity for treatment. The defendant offers nothing to suggest the court would have rendered a different decision a few months earlier had it been informed of the violations earlier. Further, he points to nothing in the record suggesting he would have been any more amenable to inpatient treatment earlier than he was later. Accordingly, he cannot carry his burden under the plain error standard of showing an effect on the outcome of the proceedings. *See United States v. Mares*, 402 F.3d 511, 521 (5th Cir. 2005) ("[T]he defendant [must] show that the error actually did make a difference: if it is equally plausible that the error worked in favor of the defense, the defendant loses; if the effect of the error is uncertain so that we do not know which, if either, side it helped the defendant loses."). Both the revocation judgment and the judgment concerning his new criminal conduct should be affirmed.[7]

---

[7] The defendant's brief on appeal is vague concerning his requested relief in the event this Court finds a due process violation; he asks only that the court of appeals "vacate the Judgment of the District Court, and remand the case to the district court for further proceedings not inconsistent with this opinion." Brief at p. 25. It is thus unclear whether he seeks to upend the revocation judgment, the judgment concerning the new criminal conduct, or both. Any effort to disturb the revocation judgment would seem contrary to his argument that his later problems could have been avoided had his supervision simply been revoked *earlier*. And to the extent he seeks to set aside the judgment regarding the new criminal conduct, he does not address at all why any alleged due process violation was not waived by the entry

**II. The district court did not abuse its discretion when it departed upwardly, under U.S.S.G. § 4A1.3, from an advisory range of 100-125 months to a sentence of 145 months. The district court properly relied on the defendant's extensive criminal history, including prior, uncounted convictions for conduct identical to the offense of conviction, as well as the fact that the defendant committed the instant offense while on supervision for a prior methamphetamine conviction for which he had served a 210-month sentence, all relevant considerations under 18 U.S.C. § 3553(a)(1).**

## A.   Standard of Review

The court of appeals reviews upward departures for reasonableness, "which necessitates that [it] review the district court's decision to depart upwardly and the extent of that departure for abuse of discretion." *United States v. Zuniga-Peralta*, 442 F.3d 345, 347 (5th Cir. 2006) (cleaned up).  An upward departure is not an abuse of discretion if the court's reasons for departing both "advance the objectives set forth in 18 U.S.C. § 3553(a)(2)" and "are justified by the facts of the case." *United*

---

of his unconditional guilty plea. *See United States v. Smallwood*, 920 F.2d 1231, 1240 (5th Cir. 1991) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").  Regardless, as Underwood is not entitled to relief as to either judgment, this Court need not address the appropriate remedy.

*States v. Saldana*, 427 F.3d 298, 310 (5th Cir. 2005), citing 18 U.S.C. § 3742(j)(1).

## B.    Applicable Substantive Law

### 1.    *Reasonableness*

As the Supreme Court made clear in *Booker*, the substantive reasonableness of a particular sentence must be gauged with reference to the factors set forth in 18 U.S.C. § 3553(a).  *United States v. Booker*, 543 U.S. 220, 261 (2005) ("Section 3553(a) remains in effect and sets forth numerous factors that guide sentencing.  Those factors will in turn guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable.").  Among the considerations specifically listed in § 3553(a) are the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1).

This Court recognizes three types of sentences: (1) a sentence within a properly calculated guidelines range; (2) a sentence that includes an upward or downward departure as allowed by the guidelines; and (3) a non-guideline sentence or a variance that is outside the relevant guidelines range.  *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008).  A sentence resulting from an upward or downward departure "as

allowed by the guidelines" is considered a "guideline sentence" afforded a rebuttable presumption of reasonableness on appeal. *United States v. Smith*, 440 F.3d 704, 706–07 (5th Cir. 2006).

### 2. *Departures based on understated criminal history (U.S.S.G. § 4A1.3)*

A defendant's criminal history falls within the ambit of "the history and characteristics of the defendant," a consideration specifically referenced in 18 U.S.C. § 3553(a). In this regard, U.S.S.G. § 4A1.3 provides that "[i]f reliable information indicates that the defendant's criminal history substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." Among the types of information the court may consider in making such a departure are "prior sentences not used in computing the criminal history category." U.S.S.G. § 4A1.3(A)(2)(A).

The court should determine the extent of the departure "by using, as a reference, the criminal history category applicable to defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant's." U.S.S.G. § 4A1.3(a)(4)(A). Long before *Booker*,

this Court recognized that even though the district court should consider intermediate levels when departing upwardly pursuant to § 4A1.3 on the way to its final sentencing destination, the court is not required "to go through a ritualistic exercise in which it mechanically discusses each criminal history category it rejects en route to the category that it selects." *United States v. Lambert*, 984 F.2d 658, 663 (5th Cir. 1993). Instead, it is sufficient if the court of appeals can "ascertain from the reasons given for the sentence selected, read in the context of the record as a whole, the legitimate basis or bases on which the district court deemed the bypassed category inadequate." *Id.*

## C.    Application of the Law to the Record

Underwood argues on appeal that the district court abused its discretion when it departed upwardly, under § 4A1.3, from an advisory range of 100-125 months to a sentence of 145 months, a 16% adjustment. Specifically, he asserts the district court gave too little weight to his grounds in mitigation of sentence, namely the time he had already spent in prison on methamphetamine offenses, his lengthy history of addiction, and "the repeated failure of the probation officer" to seek revocation

earlier. Underwood's brief at pp. 22-25. The district court did not abuse its discretion.

At the sentencing hearing, after resolving in the defendant's favor some of his objections to the PSR, the district court expressly acknowledged the advisory range of 100-125 months. ROA.21-30518.359-60. It then invited further statements and arguments from counsel and the defendant; the defendant declined to speak, and both counsel elected to rely on their written memoranda. ROA.21-30518.359.

In support of the 145-month upward departure sentence, the court then provided a detailed statement of reasons. It noted the defendant had five prior convictions for methamphetamine-related offenses, three of which were felonies; two of those felony convictions plus a perjury conviction had received no criminal history points; and Underwood had returned to trafficking methamphetamine even after having served a 210-month federal sentence for methamphetamine and firearms charges, all suggesting he was "a major drug dealer" who was "going to keep on dealing meth." ROA.21-30518.361-62.

The district court's assessment of Underwood's criminal history is demonstrably correct. His criminal record dates back to approximately 1988, when he was convicted of unauthorized use of a movable after taking an all-terrain vehicle. ROA.21-30528.202. Within seven years—during which time Underwood sustained three misdemeanor convictions for relatively minor offenses—he had earned his first conviction for possession with intent to distribute methamphetamine after being caught with what he and some co-defendants had described as the "mother load" [*sic*] of the drug. ROA.21-30528.203. And even before he had been sentenced for that offense, he had earned his second conviction for methamphetamine trafficking—not coincidentally for conduct involving a common co-defendant. ROA.21-30528.203-04.

Over the course of next few years, Underwood sustained additional convictions for possession of methamphetamine (two separate convictions for offenses committed about nine months apart), and possession of a firearm by a convicted felon. In spite of his serious record of prior offenses, the state sentencing judge was lenient, however, permitting him to serve all three sentences for those crimes concurrently. ROA.21-30528.204-05.

Still undeterred, within two years of his arrest for that group of offenses, he was arrested for the federal drug conspiracy that resulted in the term of supervised release at issue in the instant appeal.  As the district court noted, even the substantial 210-month sentence imposed on that offense was insufficient in deterring Underwood from committing new crimes, as he returned to methamphetamine trafficking within less than a year of commencing his term of supervised release.  ROA.21-30528.205-06.

Even though no points were assessed at all for five misdemeanor and two felony convictions—including two convictions for methamphetamine trafficking—Underwood still managed to achieve a Criminal History Category V.  ROA.21-30528.207.  As the district court noted, had points been assessed for even some of those other convictions, he would have amassed as many as 20 criminal history points, easily qualifying as a Category VI offender.  ROA.21-30518.361.

Nonetheless, in spite of this lengthy record, before his earlier federal conviction for methamphetamine trafficking, Underwood had actually served relatively little time in prison.  Most of his early sentences included terms of probation, or sentences run concurrently with other

sentences.    ROA.21-30528.202-06.    And as the district court also observed, even a substantial 210-month federal sentence was insufficient to deter the new criminal conduct.  ROA.21-30518.361-62.

The number of Underwood's prior offenses; the similarity of so many of them to the new criminal conduct; his apparent inability to comply with conditions of supervision; and the failure of even a more substantial prior federal sentence to deter the instant violation fully supported the district court's conclusion that his Category V designation did not adequately capture his criminal history and risk of recidivism. *See e.g., United States v. Goynes*, 432 F. App'x 362, 364 (5th Cir. 2011) (affirming an upward departure because the defendant had "shown a dangerous propensity to commit similar crimes, even while on supervised release"); *United States v. Palacios Pena*, 402 F. App'x 858, 860 (5th Cir. 2010) (affirming an upward departure based on the district court's finding the defendant was "a repeat offender" who "did not receive as many criminal history points as he could have" because one prior offense had been committed when he was a juvenile, and he had received lenient sentences on two other prior convictions, resulting in only one criminal history point each); *United States v. Sealed Juvenile 1*, 359 F. App'x 498,

499 (5th Cir. 2010) ("The fact that the appellant had repeatedly engaged in the transportation of illegal aliens supports the district court's conclusion that the appellant would reoffend.").

There is no merit to Underwood's assertion that the district court abused its discretion by failing to give controlling weight to certain grounds in mitigation—his persistent addiction to methamphetamine, the fact that he had already served time for various methamphetamine offenses, and the probation officer's alleged "failure" to seek revocation of his supervision earlier.   Brief at pp. 22-25.   The district court was certainly aware of these considerations.   Most were addressed in Underwood's sentencing memorandum; his criminal history and the extent of his addiction were well-documented in the PSR; and the district court had first-hand knowledge regarding how the probation officer had managed Underwood while under supervised release.   ROA.21-30528.202-06, 209, 278-81.   The district court simply declined to give those considerations controlling weight.   This was entirely within the court's discretion because, as this Court has recognized, while district courts "must consider all the § 3553(a) factors, … is not possible, let alone required, that they give incommensurable factors, such as 'the history

and characteristics of the defendant' and 'adequate deterrence to criminal conduct,' equal weight." *United States v. Alvarado*, 691 F.3d 592, 597 (5th Cir. 2012) (cleaned up). Instead, "a sentencing judge must use their judgment to weigh the relative importance of each factor in relation to each particular defendant, with some factors being more important in some cases and other factors more important in others." *Id.* (affirming Alvarado's sentence over his assertion the district court should have given more weight to his mitigating circumstances and less weight to his history and characteristics).

Finally, the extent of the departure—a modest 16% from the high end of the 100-125 month range—is smaller than other departures and deviations affirmed by this Court. *See e.g., United States v. McElwee*, 646 F.3d 328, 338, 343-33 (5th Cir. 2011) (upholding a sentence of 36 months when the high end of the applicable range was 6 months); *United States v. Brantley*, 537 F.3d 347, 348-350 (5th Cir. 2008) (affirming a total sentence of 180 months when the top of the guideline range was 51 months); *United States v. Jones*, 444 F.3d 430, 433 (5th Cir. 2006) (upholding a sentence of 120 months where the high end of the guideline range was 57 months); *Smith*, 440 F.3d 705–06 (upholding a

sentence of 60 months where the maximum sentence under guidelines range was 27 months); *United States v. Smith*, 417 F.3d 483, 491-92 (5th Cir. 2005) (affirming as reasonable a statutory maximum sentence of 120 months when the top of the guideline range was 41 months); *United States v. Daughenbaugh,* 49 F.3d 171, 174–75 (5th Cir. 1995) (upholding a sentence of 240 months where the maximum sentence under the guidelines range was 71 months).

At bottom, Underwood's 145-month upward departure sentence "advance[s] the objectives set forth in 18 U.S.C. § 3553(a)(2)" and "[is] justified by the facts of the case." *Saldana*, 427 F.3d at 310. The district court did not abuse its discretion.

# CONCLUSION

The judgments concerning both Underwood's supervised release and his sentence on the new criminal conduct should be affirmed.

Respectfully submitted,

BRANDON B. BROWN
United States Attorney


BY:  *s/ Camille A. Domingue*

CAMILLE A. DOMINGUE (#20168)
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501
(337) 262-6618

## CERTIFICATE OF SERVICE and
## COMPLIANCE WITH ECF FILING STANDARDS

I hereby certify that a copy of the foregoing Brief on Behalf of Appellee, The United States of America, was filed electronically with the Fifth Circuit Court of Appeals using the electronic filing system. Notice of this filing will be sent to counsel of record either by operation of the court's electronic filing system and/or via United States Mail to:

> Ms. Elizabeth Cary Dougherty
> DOUGHERTY LAW FIRM, L.L.C.
> P. O. Box 80419
> Baton Rouge, LA 70898-0419.

In addition, I hereby certify that: (1) all required privacy redactions have been made pursuant to 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document pursuant to 5th Cir. R. 25.2.1; and, (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Lafayette, Louisiana, this the  12th  day of August, 2022.


BY:  *s/ Camille A. Domingue*

> CAMILLE A. DOMINGUE (#20168)
> Assistant United States Attorney
> 800 Lafayette Street, Suite 2200
> Lafayette, LA 70501
> (337) 262-6618

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App.
    P. 32(a)(7)(B) because:

    (a)    This brief contains **7,526** words.

2.  This brief complies with the typeface requirements of Fed. R. App.
    P. 32(a)(5) and the type style requirements of Fed. R. App. P.
    32(a)(6) because:

    (a)    This brief has been prepared in a proportionally spaced
           typeface using:

           Software Name and Version – **Microsoft Word Office
           365**;

           in Typeface Name and Font Size - **Century
           Schoolbook 14 pt.**


*s/Camille A. Domingue*
                               August 12, 2022
CAMILLE A. DOMINGUE (#20168)         Date
Assistant United States Attorney